# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

JOHN G. KENNEDY, III,

    Plaintiff,

v.

ELECTRIC INSURANCE COMPANY,

    Defendant.

CV 4:18-148

## ORDER

Before the Court is Defendant Electric Insurance Company's Motion to Exclude Plaintiff's Expert John Tanner and Defendant's Motion for Summary Judgment, dkt. no. 22. These Motions have been fully briefed and are ripe for review. For the reasons that follow, the Motions are **DENIED**.

## BACKGROUND

On or about October 8, 2016,[1] Hurricane Matthew struck Plaintiff's property. Dkt. No. 25-4 ¶ 1.[2] Plaintiff's property abuts the Wilmington River. Id. ¶ 2. The storm surge from

---

[1] Defendant's Statement of Undisputed Material Facts states April 8, 2016, but it later repeatedly references October 8, 2016. Considering other references in the record that Hurricane Matthew struck the Savannah area on October 8, 2016, the Court construes the April date as a typographical error.

[2] The Court notes that a significant number of Defendant's statements in its Statement of Undisputed Material Fact do not cite to the record in contravention of Local Rule 56.1. Nevertheless, those statements that have been admitted by Plaintiff are considered admitted for purposes of this Motion.

Hurricane Matthew significantly damaged Plaintiff's property, including his house, yard, roofed dock, and walkway. Id. Plaintiff did not witness the hurricane. Id. ¶ 4.

The parties dispute whether the damage to Plaintiff's dock and walkway were excluded from a homeowner's insurance policy that Plaintiff had with Defendant. The policy at issue precludes coverage over damage caused in whole or in party by storm surge. Dkt. No. 25-4 ¶ 14. An engineering expert for Defendant, Carl Douglas Day, concluded after inspecting the premises that the dock and walkway were damaged by storm surge. Id. ¶ 5. Nevertheless, Day agreed that the damage to the dock was consistent with being caused by a tornado with 120 mile an hour winds. Dkt. No. 25-2 at 71. Another engineering expert for Defendant, Douglas Locker, also inspected the property and concluded that the dock and walkway were primarily damaged by storm surge. Dkt. No. 25-4 ¶ 6.

Plaintiff, however, retained his own expert, John Tanner, who concluded that the dock and walkway were damaged by a tornado. Dkt. No. 25-4 ¶ 7. Tanner made this conclusion despite the facts that there were no eyewitnesses to the tornado, id. ¶ 9, that Tanner is unsure of when the tornado struck the dock, id. ¶ 10, that Tanner is unsure when the storm surge struck the area of the dock, id. ¶ 11, that the storm surge exceeded the height of the "dock base," id. ¶ 13, and that on October 8, 2016, there was no

2

official report or finding of a tornado at or near Plaintiff's property, id. ¶ 15.[3]

## DISCUSSION

**I. Daubert Challenge of Expert John Tanner**

Defendant argues that Plaintiff's expert John Tanner is not qualified to be an expert under Federal Rule of Evidence 702, that his expert opinions do not satisfy Rule 702, and thus, that his opinions should be excluded. It is well-settled that "[e]vidence inadmissible at trial cannot be used to avoid summary judgment." Lebron v. Sec'y of Fla. Dep't of Children & Families, 772 F.3d 1352, 1360 (11th Cir. 2014) (citation omitted). Accordingly, if Tanner is not qualified as an expert and if his opinions do not satisfy the dictates of Rule 702, then his opinions cannot be considered for purposes of this summary judgment motion.

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[3] Defendant also states that Tanner "admitted that the storm surge could have caused the damage to the dock and walkway." Dkt. No. 22-7 ¶ 12. For this proposition, Defendant cites "Tanner depo. P. 58," id., not only has Plaintiff disputed this statement, but Tanner's deposition is not in the record.

AO 72A
(Rev. 8/82)

"As the Supreme Court recognized in Daubert v. Merrell Dow Pharms., Inc., Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of scientific testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

A three-pronged inquiry determines the admissibility of expert testimony under Rule 702:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Quiet Tech., 326 F.3d at 1340-41 (citation omitted).

### A. The Qualifications Requirement

For the first requirement, whether the expert is qualified, the party offering the expert must show by a preponderance of the evidence that the expert has sufficient "knowledge, skill, experience, training, or education" to form a reliable opinion about the relevant issue. Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010). Here, the relevant

AO 72A
(Rev. 8/82)

issue is the cause of the damage to Plaintiff's dock and walkway—more specifically, whether storm surge or a tornado caused the damage.

As an initial matter, although Plaintiff and Defendant often cite to Tanner's deposition, Tanner's deposition has not been included in the record before the Court. Accordingly, any representations by the parties regarding that deposition cannot be considered. However, Tanner's curriculum vitae ("CV") and his expert report are included in the record.

According to his CV, Tanner has "50 years of experience in structural design and management." Dkt. No. 25-1 at 1. This experience "is in marine port structures, forensic analysis of concrete structures and repair design, and design of large industrial structural frames." Id. Over these 50 years, Tanner has "worked as engineer, lead engineer, department manager, chief engineer, project manager and regional/office manager for large engineering firms." Id. Before his retirement in 2012, Tanner was a Registered Professional Engineer in the states of Virginia, Georgia, Florida, South Carolina, North Carolina, and Washington. Id. Currently, Tanner is only a Registered Professional Engineer in Georgia. Id.

Tanner has extensive experience working as an engineer on port structures. He worked on a new marine terminal in Venezuela, a new floating mooring facility for submarines in Italy, and

AO 72A
(Rev. 8/82)

evaluated foundations for 900-ton cranes in Virginia, to list a small sample of his engineering work related to marine structures. Id. at 2-3. Further, while working for Alumax, Inc. as a project manager and technical consultant, Tanner was tasked with above and underwater inspection for a mobile crane for higher loads "on a bridge that the original design calculations and member reinforcing details were not available." Id. at 1. Tanner has also worked as an engineer for the U.S. Navy, U.S. Coast Guard, the Georgia Ports Authority, the South Carolina State Ports Authority, and numerous private entities. Id. at 1-4. Based on Tanner's extensive experience, Tanner is qualified to form reliable opinions about the issues at hand.

**B. The Reliability Requirement**

Regarding the reliability requirement, in Daubert, the Supreme Court directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. There are four factors that courts may consider, if applicable: (1) whether the theory or technique can be tested, (2) whether it has been subject to peer review, (3) whether the technique has a known or potential rate of error, and (4) whether the theory has attained general acceptance in the relevant

AO 72A
(Rev. 8/82)

community. Id. at 593-94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Defendant argues that Tanner's testimony should be excluded because it "is premised on an inadequate or inaccurate factual foundation and therefore lacks the requisite reliable methodology and foundation required under Rule 702 and Daubert and its progeny." Dkt. No. 22-1 at 11. Specifically, Defendant cites to Tanner's deposition for numerous positions that Tanner allegedly took and are unreliable: (1) that Tanner admitted that a storm surge could have caused the damage; (2) that Tanner did not use scientifically sound evidence when concluding that an unreported tornado caused the damage; (3) that Tanner relied on the hearsay testimony of a neighbor; (4) that Tanner admitted he was not sure when the storm surge hit the area; and (5) that Tanner was used as an expert to challenge about ten other homeowner's insurance company's findings that storm surge caused property damage. Again, Tanner's deposition has not been entered into the record, and these

representations of Tanner's testimony cannot be considered by the Court at this stage.

The evidence in the record is not sufficient to challenge the reliability of Tanner's opinions and statements contained in his expert report. Defendant states that Tanner ignored evidence that was not beneficial such as the fact that Preston Sikes, a neighbor of Plaintiff, told Defendant's expert Carl Douglas Day that the storm surge was about two-and-a-half feet above the seawall, which is much higher than Tanner concluded. The statement in Day's report that Defendant refers to is that Sikes "stated that he believed the storm surge during the hurricane was approximately 2.5 feet above the top of the seawall." Dkt. No. 22-3 at 3. The record does not contain the basis for this belief, just that Sikes, a lay person, held this belief. The fact that Tanner may have ignored the belief of a lay person (the basis of which is unknown) when formulating his opinions is not sufficient to show that Tanner's opinions are unreliable. This is especially so when considering the fact that Tanner thoroughly explains in his report the bases for his opinions, and the Court finds that these bases are reasonable and reliable.

Notably, Plaintiff has carried his burden of establishing that Tanner's opinions are reliable. A thorough reading of Tanner's report shows that Tanner's opinions are based on relevant facts and are reasonably drawn from his premises. Tanner's

AO 72A
(Rev. 8/82)

opinions are not counter to the factual evidence relied upon, but are instead supported by it. For example, much of the evidence was consistent with high, localized winds and inconsistent with Hurricane Matthew's storm surge causing the damage. To highlight some of the more convincing evidence, Tanner found that: (1) docks on Wilmington River at a lower elevation from Plaintiff's dock were not damaged; (2) Plaintiff had special shingles rated at 120 to 130 mph winds, meaning the winds must be at least that strong for the shingles to dislodge from the roof, and about 40 to 50% of Plaintiff's shingles blew off his roof; and (3) tree damage on Plaintiff's property and properties nearby were consistent with a tornado. For these reasons, the Court finds that Tanner's opinions are reliable under Federal Rule of Evidence 702 and Daubert.

## C. The Assistance Requirement

Turning to the final factor, expert testimony must assist the trier of fact to decide a fact in issue. Thus, the testimony must concern matters beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case. Id. at 591; Frazier, 387 F.3d at 1262. The Supreme Court has described this test as one of "fit." Daubert, 509 U.S. at 591. "Proferred expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

AO 72A
(Rev. 8/82)

This factor weighs in favor of admitting Tanner as an expert on the cause of the damage to Plaintiff's dock and walkway. Defendant argues that for the same reasons Tanner's opinions are unreliable, they will also not assist the trier of fact. The Court, however, has already found that Tanner's opinions are reliable based on this record. In addition, Defendant argues that Tanner has only offered legal conclusions. Tanner, however, has offered expert opinions on the cause of the damage at issue, i.e., that a tornado caused the damage. While this opinion may lead to a certain legal outcome, it is not a legal conclusion but a factual one. Accordingly, it should not be excluded on the ground that it is a legal conclusion. Finally, the Court concludes that Tanner's expert opinions are beyond the understanding of the average lay person and will assist the trier of fact. Tanner's report and its attachments evince the complexity of the issue of what caused the damage to Plaintiff's walkway and docks. The analysis needed to determine the cause of such damage is beyond the understanding of the average lay person, and Tanner's opinions will assist the trier of fact in making this determination. For these reasons, then, this factor weighs in favor of admitting Tanner as an expert.

## II. Defendant's Motion for Summary Judgment

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

AO 72A
(Rev. 8/82)

56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th

Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

Defendant argues that it is entitled to summary judgment because without Tanner's opinions the record is devoid of evidence showing that the cause of damage to the walkway and dock was not storm surge. In other words, without Tanner's opinions, the only possible cause of the damage is storm surge. Thus, a reasonable jury would have to find that storm surge caused the damage and thus that the policy exclusion applied. This argument must fail, however, because the Court has found that Tanner's opinions should not be excluded. Accordingly, Defendant's Motion for Summary Judgment is due to be **DENIED**.

## CONCLUSION

For the reasons stated above, Defendant Electric Insurance Company's Motion to Exclude Plaintiff's Expert John Tanner and Defendant's Motion for Summary Judgment, dkt. no. 22, are both **DENIED**.

**SO ORDERED**, this 13th day of May, 2019.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA