# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN G. KENNEDY, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV418-148 |
| | ) | |
| ELECTRIC INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are defendant's First Motion in Limine, doc. 38, plaintiff's Motion in Limine, doc. 41, and defendant's second Motion in Limine, doc. 42. For the following reasons, defendant's First Motion in Limine, doc. 38, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion in Limine, doc. 41, and defendant's second Motion in Limine, doc. 42. are **CONSTRUED AS MOTIONS FOR SUMMARY JUDGMENT**. The parties are directed to file any necessary supplementation within ten days from the date of this order.

## BACKGROUND

This case was removed to Federal Court on June 18, 2018. Doc. 1. Plaintiff John Kennedy owns property covered by a homeowner's insurance policy issued by defendant Electric Insurance Company. Doc. 1-2 at 5. In addition to covering the home, the policy also covered "other structures,"

including a dock, dock house, and walkway on the property. *Id.* Plaintiff alleges that during Hurricane Matthew in 2016, his property suffered a total loss of the dock, dock house, and walkway as a result of high winds. *Id.* Plaintiff submitted a claim to defendant, which was denied after an engineer determined that the damage had been caused by storm surge. Doc. 22-1 at 2. Defendant asserts that damage caused by flood or storm surge is excluded from coverage under the terms of the policy. *Id.* Plaintiff has identified an expert who alleges instead that the dock and walkway were damaged by a tornado. *Id.* at 3.

After removal, the parties conducted discovery, and defendant filed a Motion for Summary Judgment, doc. 22, to which plaintiff responded. Doc. 25. Defendant's Motion for Summary Judgment was more accurately characterized as a challenge to plaintiff's expert pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as it sought to exclude his testimony that the damage for which plaintiff sought recovery was caused by a tornado. In May of 2019, the district judge denied defendant's Motion to Exclude and Motion for Summary Judgment. Doc. 28.

The case was then set for trial and a pretrial conference was scheduled for February 14, 2020. Doc. 30, doc. 31. Before that conference could occur—and six months after the Court denied its initial motion—defendant sought reconsideration of the district judge's determination that plaintiff's expert was

qualified because defendant had not included the expert's deposition. Doc. 34. The district judge again denied defendant's motion noting that "attorney error is not a basis for amending an earlier judgment." *Id.* at 4. Moreover, the court noted that defendant's "new argument for excluding [the expert's] testimony, *i.e.* that he is not a forensic meteorologist, will not be considered by the Court." *Id.* at 5. The Court noted then that "the deadline for filing dispositive motions has long passed, and the Court will not now give Defendant a second bite at summary judgment." *Id.* In preparation for trial, both plaintiff and defendant have filed motions in limine which have been referred to the undersigned for disposition. The Court addresses each in turn.

## ANALYSIS

I. Defendant's First Motion in Limine

In the motion, defendant requests the following relief:

1. That no new expert opinions be introduced beyond those disclosed;
2. That no testimony regarding the existence of a tornado be introduced;
3. That no discussions of offers regarding possible compromise be admitted;
4. That no personal beliefs of counsel be admitted;
5. That the court exclude any reference or suggestion as to the probable testimony of a witness available to plaintiff who is not called testify;

6. That the Court exclude any documents, photographs, video tape recordings, etc. that have not been produced in discovery, identified with reasonable particularity in the parties' Consolidated Pretrial Order, or disclosed within ten days of trial; and

7. That the Court exclude any reference or suggestion that Plaintiff was forced to bring the lawsuit or to try his case.

Plaintiff does not object to defendant's first request for relief so long as it does not preclude plaintiff's expert from answering a question asked by defendant regardless of whether it gives rise to some new opinion that has not previously been explored. Doc. 39 at 1. Defendant has not objected to this caveat, accordingly, that request is **GRANTED**.

Plaintiff does, however, object to defendant's second request for relief. *Id.* at 2. As defendant notes, this is the third time that defendant has sought to preclude plaintiff's expert from testifying as to his opinion that it was a tornado that caused the damage to the dock and walkway, rather than storm surge. *Id.* The district judge has already clearly stated that there is no justification for restricting plaintiff's expert's testimony, nor would the court countenance a reconsideration of that opinion. Despite defendant's attempt to couch it as a restriction on testimony regarding a "tornado" rather than as a *Daubert* motion, there remains no reason to exclude the testimony of plaintiff's expert

particularly in light of the district judge's multiple rulings on the issue. Defendant's second request for relief is **DENIED**. As to the third through seventh issues raised in the motion in limine, plaintiff does not object. *Id.* at 2-3. Accordingly, the remainder of the motion is **GRANTED**.

> II. Plaintiff's First Motion in Limine and Defendant's Second Motion in Limine[1]

The two remaining motions in limine both address the same issue. Doc. 41, doc. 42. The parties disagree as to the extent of coverage available to plaintiff under the applicable policy if it is determined that his dock and walkway *are* covered. The parties have both attached a copy of the declarations page and insurance policy. Doc. 41-1; doc. 42-1. There are two sections providing limits on liability. The first, Section A states that the coverage for a "Dwelling" is limited to $1,693,500.00. Doc. 41-1 at 2. The second, and the provision at issue for purposes of these motions, is Section B "Other Structures," which limits coverage to 1/10 of the dwelling coverage or $169,350.00. *Id.* Defendant alleges that the coverage available to plaintiff is limited to $169,350 and that because $55,703.72 has already been paid for damage to the driveway,

---

[1] As an initial matter, the Court notes that in order to convert a motion in limine into a motion for summary judgment, the court must "notify the parties that the motion has been converted, and give the parties 10 days in which to supplement the record." *Trustmark Ins. Co v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).

5

garage, fence, tree removal etc., the coverage should be further reduced. Doc. 41 at 2.

Plaintiff however, disagrees. Plaintiff contends that one of the additional endorsements that he purchased increases the coverage to "replacement cost." *Id.* Plaintiff points to a portion of the policy which reads as follows:

> "Replacement Cost Protection—Dwelling—"Covered losses to buildings under Coverage A <u>or B</u> are settled at replacement cost without deduction for depreciation, subject to the following:
> a. We will pay the cost to repair or replace without deduction for depreciation, but not exceeding the smallest of the following amounts. We agree that this amount may exceed the limit of liability which applies to Coverage A:
>   1. Cost to replace the damaged part of the building with the same materials and for the same use.
>   2. The amount you had to spend to repair or replace the damaged building.

Doc. 41 at 2. Plaintiff argues that this provision allows him to seek recovery in excess of that provided by the policy.

Defendant's argument in opposition is that, despite the terms of the policy applying to buildings under Coverage A or B, it is industry standard to lay out the limits of liability in the declarations page. Doc. 42 at 3. Defendant also argues that the terms cited above allow the amount to exceed the limit of liability applied to Coverage A, but do not similarly allow the policy to exceed the limit of liability that applies to Coverage B. *Id.* at 5. Likewise, defendant alleges that the terms "replacement cost" and "limit to coverage" are not

incompatible. *Id.* Defendant finally argues that plaintiff's interpretation of the policy would be "illogical" since it would make plaintiff's "other structures" coverage virtually boundless. *Id.*

Despite the parties titling their motions as "Motions in Limine," what they request of the Court is not the type of relief normally seen in these kinds of motions. Chief Judge Hall has cogently explained before that

> [a] motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). Black's Law Dictionary defines motion in limine as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Motion in Limine, Black's Law Dictionary* (10th 2014). Further, leading treatises criticize the practice of dismissing claims *in limine. E.g.,* Charles Allen Wright & Kenneth W. Graham, Jr., 21 *Fed. Prac. & Proc.* § 5037.18 (2d ed. 2005)("Now that Revised or motions to dismiss."). At least two circuit courts of appeal have agreed, and have held that the dismissal of claims and defenses by motion in limine is improper. *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.,* 690 F.3d 1354, 1378 (Fed. Cir. 2012) ("Because we conclude that it was procedurally improper for the court to dispose of [defendant's] inequitable conduct defense on a motion *in limine*, we reverse the court's decision and remand for further proceedings."); *Mid-America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1363 (7th Cir. 1996) (finding that argument regarding the sufficiency of evidence "might be a proper argument for summary judgment or judgment as a matter of law, it is not a proper basis for a motion to exclude evidence prior to trial").

*Gold Cross Ems, Inc. v. Children's Hospital of Ala.*, 309 F.R.D. 699, 700 (S.D. Ga. 2015). Chief Judge Hall went on to note that while the practice of dismissing

claims by motion in limine "is not unprecedented" in this Circuit and at least two others, declining to do so was more appropriate. Nor is it unprecedented in this Circuit to decline to rule on issues of contract interpretation via a motion in limine. *See, e.g., Plaza South Assoc., Inc. v. QBE Ins. Corp.*, 2012 WL 13005529, at * 3 (S.D. Fla. 2012) (declining to reach question of contract interpretation via summary judgment); *Hatch v. GeoVera Specialty Ins. Co.*, 2019 WL 2515926 (M.D. Fla. 2019) (declining to overturn summary judgment determination via motion in limine); *see contra*, *Ins. House, Inc. v. Ins. Data Processing Inc.*, 2009 WL 10670469 (N.D. Ga. 2009).

This is certainly a closer case than that addressed in *Gold Cross*, but the Court concludes that what the parties are seeking is not the exclusion of evidence via a motion in limine, but rather, relief which *should* have been brought via a motion for summary judgment. The parties are essentially seeking to estop the other from arguing the limits of liability on the policy. They make this request by asking the Court to interpret the terms of the contract, rather than to formally exclude evidence. While not case dispositive, a determination will effectively limit the recovery available to plaintiff and would prevent defendant from arguing that the terms of the policy exclude excess recovery. Thus, it is necessary to convert the motions into cross-motions for summary judgment and give the parties ten days to supplement the record.

In doing so, however, it is necessary to address certain issues. First, the parties should be prepared to brief to the Court why the motions, properly construed, are not untimely. Second, the parties should be prepared to address, specifically, how Georgia rules of contract interpretation apply. The parties are reminded that, in Georgia, contract interpretation is a three-step process.

> [I]nitially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury [or other factfinder]. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13–2–2.

*White v. Kaminsky*, 271 Ga. App. 719, 721, 610 S.E.2d 542 (2004). It is clear of course that the Court must "construe any ambiguities most strongly against the party who drafted the agreement." *Hertz Equip. Rental. Corp v. Evans*, 260 Ga. 532, 397 S.E.2d 692 (1990). Third, the Court notes that *both* parties reference certain industry standards with no supporting affidavits. *See, e.g.*, doc. 41 at 3 ("Replacement cost certainly is a term of art in the insurance industry."); doc. 42 at 3 ("In the insurance industry it is standard to state these coverages and

9

limits of coverages on the declarations page."). If the Court determines that an ambiguity exists, particularly with regards to the term "replacement cost," and its common or understood meaning, it is generally customary to provide some evidence in support of the definition encouraged by the parties. *See, e.g.,* O.C.G.A. § 13-2-2 ("Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this particular meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties."). The Court is disinclined to consider unsworn assertions at this stage considering the significance of the rulings urged by the parties. In short, rather than abbreviated motion in limine style arguments regarding the insurance contract, the parties should prepare supplements which fully and completely support their arguments as to the appropriate contract interpretation in this case. If the parties believe that any portion of the contract is sufficiently ambiguous that there is a question of fact for the jury, the Court anticipates that the parties will fully brief that issue as well.

## CONCLUSION

For the foregoing reasons, defendant's First Motion in Limine, doc. 38, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion in Limine, doc.

41, and defendant's second Motion in Limine, doc. 42. are **CONSTRUED AS MOTIONS FOR SUMMARY JUDGMENT**. The parties are directed to file any necessary supplementation within ten days from the date of this order.

**SO ORDERED,** this 24th day of March, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA