# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

JOHN G. KENNEDY, III,      )
                             )
      Plaintiff,        )
                             )
v.                        )        CV418-148
                             )
ELECTRIC INSURANCE COMPANY, )
                             )
      Defendant.     )

## REPORT AND RECOMMENDATION

Before the Court are plaintiff's Motion in Limine, doc. 41, and defendant's second Motion in Limine, doc. 42, which the Court construed as Motions for Summary Judgment and gave the parties an opportunity to supplement.  Doc. 45.  For the following reasons, plaintiff's motion should be **GRANTED**, doc. 41, and defendant's motion should be **DENIED**, doc. 42.  The limits of liability should not be not subject to the $169,350.00 limitation set forth in the declarations page for Coverage B.

## BACKGROUND

This case was removed to Federal Court on June 18, 2018.  Doc. 1. Plaintiff John Kennedy owns property covered by a homeowner's insurance policy issued by defendant Electric Insurance Company.  Doc. 1-2 at 5.  In addition to covering the home, the policy also covered "other

structures," including a dock, dock house, and walkway on the property. *Id.* Plaintiff alleges that during Hurricane Matthew in 2016, his property suffered a total loss of the dock, dock house, and walkway as a result of high winds. *Id.* Plaintiff submitted a claim to defendant, which was denied after an engineer determined that the damage had been caused by storm surge. Doc. 22-1 at 2. Defendant asserts that damage caused by flood or storm surge is excluded from coverage under the terms of the policy. *Id.* Plaintiff has identified an expert who alleges instead that the dock and walkway were damaged by a tornado. *Id.* at 3.

After removal, the parties conducted discovery, and defendant filed a Motion for Summary Judgment, doc. 22, to which plaintiff responded. Doc. 25. This motion was denied in May of 2019. Doc. 28. The case was then set for trial and a pretrial conference was scheduled for February 14, 2020. Doc. 30, doc. 31. Before that conference could occur—and six months after the Court denied its initial motion—defendant sought reconsideration of the district judge's prior order. Doc. 34. While the district judge again denied defendant's motion, the court noted that defendant's "new argument for excluding [the expert's] testimony, *i.e.* that he is not a forensic meteorologist, will not be considered by the

Court." *Id.* at 5.  The Court noted then that "the deadline for filing dispositive motions has long passed, and the Court will not now give Defendant a second bite at summary judgment." *Id.*  Nevertheless, at the pretrial hearing, the district judge gave the parties the opportunity to file final motions regarding the extent of coverage available pursuant to the contract.  It is these dueling motions that are the basis for the following Report and Recommendation.

## ANALYSIS

### I.   Dueling Motions for Summary Judgment

As previously discussed, the two remaining motions both address the same issue.  Doc. 41, doc. 42.  The parties disagree as to the extent of coverage available to plaintiff under the applicable policy if it is determined that his dock and walkway *are* covered.  As an initial matter, the Court agrees that, ordinarily, the motions as filed would be untimely. *See, e.g.,* doc. 47 at 2.  However, considering the fact that the question the parties ask this Court to resolve is ordinarily a question of law rather than a question of fact which will narrow the issues to be decided by the jury and aid in the prompt resolution of this case prior to trial, *see infra* p. 5,

and because the Court invited briefing on this issue, the Court will consider the issue out-of-time.

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325.  If the moving party discharges this burden, the burden shifts to the

4

nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting *Celotex Corp.*, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id*. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

In Georgia,[1] "the interpretation of a contract is normally a question of law to be resolved by the court." *Willesen v. Ernest Communications,*

---

[1] This is a diversity case. As a result, "the Court is bound by the applicable state law governing the contract." *Evanston Ins. Co. v. Xytex Tissue Service, LLC*, 378 F. Supp. 3d 1267 (S.D. Ga. 2019) (citing *Giddens v. Equitable Life Assurance Soc'y of the U.S.*,

*Inc.*, 323 Ga. App. 457, 459, 746 S.E.2d 755 (2013) (citing *Goody Products v. Dev. Auth of City of Manchester*, 320 Ga. App. 530, 532, 740 S.E.2d 261 (2013)).  Courts engage in a three-step process to analyze provisions in a contract.

> First, the trial court must decide whether the language is clear and unambiguous.  If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning.  Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity.  Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury [or other factfinder].  The existence or nonexistence of an ambiguity is a question of law for the court.  If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13–2–2.

*White v. Kaminsky*, 271 Ga. App. 719, 721, 610 S.E.2d 542 (2004).  It is clear of course that the Court must "construe any ambiguities most strongly against the party who drafted the agreement."  *Hertz Equip. Rental. Corp v. Evans*, 260 Ga. 532, 397 S.E.2d 692 (1990).  However, "[a]n insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation.  The policy should be read as

---

445 F.3d 1286, 1297 n. 9 (11th Cir. 2006)).  The parties do not dispute that Georgia law controls.

a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Banks v. Brotherhood Mut. Ins. Co.*, 301 Ga. App. 101, 103, 686 S.E.2d 872, 874 (2009) (citing *State Farm etc. Ins. Co. v. Staton*, 286 Ga. 23, 25, 685 S.E.2d 263 (2009).

The parties have both attached a copy of the declarations page and insurance policy.  Doc. 41-1; doc. 42-1.  There are two sections providing limits on liability.  The first, Section A, states that the coverage for a "Dwelling" is limited to $1,693,500.00.  Doc. 41-1 at 2.  The second, and the provision at issue for purposes of these motions, is Section B, "Other Structures," which limits coverage to 1/10 of the dwelling coverage or $169,350.00.  *Id.*

Plaintiff contends that one of the additional endorsements (the "Homeowners Plus Endorsement") that he purchased increases the coverage to "replacement cost."  Doc. 41.  Plaintiff points to a portion of the policy which reads as follows:

> "Replacement Cost Protection—Dwelling—"Covered losses to buildings under Coverage A <u>or B</u> are settled at replacement cost without deduction for depreciation, subject to the following:
>> a. We will pay the cost to repair or replace without deduction for depreciation, but not exceeding the smallest of the following amounts.  We agree that this amount may exceed the limit of liability which applies to Coverage A:

> 1.   Cost to replace the damaged part of the building with the same materials and for the same use.
> 2.   The amount you had to spend to repair or replace the damaged building.

*Id.* at 2.  Plaintiff argues that this provision allows him to seek recovery in excess of that provided by the policy.

While *both* parties referenced certain industry standards as a basis for interpreting these two terms, they initially failed to provide supporting affidavits, or indeed, argument regarding what those standards meant. *See, e.g.*, doc. 41 at 3 ("Replacement cost certainly is a term of art in the insurance industry."); doc. 42 at 3 ("In the insurance industry it is standard to state these coverages and limits of coverages on the declarations page.").[2]  Plaintiff now argues that the cardinal rule of contract construction is to ascertain the intent of the parties.  Doc. 47 at 2.  To that end, plaintiff has attached an affidavit from Mr. Kennedy arguing that it was his "intent and understanding that by purchasing a replacement cost rider from Electric Insurance Company, that not only the house, but the dock would be fully covered for replacement cost

---

[2]  *See, e.g.,* O.C.G.A. § 13-2-2 ("Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this particular meaning.  The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties.").

without being limited to the coverage limits set forth in the declaration policy itself." Doc. 47 at 2; doc. 47-1. Moreover, plaintiff argues that, despite the conflict between the two provisions, it would be unreasonable to assume that defendant would accept additional premiums for a policy rider that provided the insured with no additional coverage. Doc. 47 at 5.

Defendant's argument in opposition is that, despite the terms of the policy applying to buildings under Coverage A or B, it is industry standard to lay out the limits of liability in the declarations page. Doc. 42 at 3. Defendant also argues that the terms cited above allow the amount to exceed the limit of liability applied only to buildings under Coverage A, but do not similarly allow the policy to exceed the limit of liability that applies to buildings subject to Coverage B. *Id.* at 5. Likewise, defendant alleges that the terms "replacement cost" and "limit to coverage" are not incompatible. *Id.* Finally, defendant argues that plaintiff's interpretation of the policy would be "illogical" since it would make plaintiff's "other structures" coverage virtually boundless. *Id.* Defendant argues that while the Homeowners Plus endorsement allows for the replacement of a structure without cost for depreciation, nothing about the language of the policy allows it to exceed the limits set forth in the declarations page. Doc.

48 at 4.  Plaintiff argues that the Court should look to the entire contract to resolve the ambiguity.  *Id*. at 6.

Applying the three-step procedure set forth above, the Court concludes that there is no ambiguity in the contract terms.  At issue is what the language "[w]e will pay the cost to repair or replace without deduction for depreciation, but not exceeding the smallest of the following amounts.  We agree that this amount may exceed the limit of liability which applies to Coverage A," means when read with the preceding language, "[c]overed losses to buildings under Coverage A or B are settled at replacement cost without deduction for depreciation, subject to the following".  The Court concludes that this language is not ambiguous, despite defendant's arguments to the contrary.  The language clearly states that covered losses to buildings under *either* Coverage A or B will be settled at replacement cost.  It then goes on to acknowledge, without differentiating between the two types of available coverage, that there will be no depreciation deduction (except as described in two following provisions) and that the cost to repair or replace *buildings* "may exceed the limit of liability which applies to Coverage A."  Reading these provisions as a layman would—as the Court must in this circumstance—

10

the terms of the policy clearly and unambiguously allow replacement costs for buildings under Coverage A *or B* to exceed the limit of liability applicable to Coverage A.   The applicable limit to Coverage A is $1,693,500.00.  Thus, any repairs to buildings under Coverage A *or B* are settled at replacement cost without deduction for depreciation, and— subject to the two additional restrictions—may exceed this million-dollar coverage provision.

There is nothing in the Homeowners Plus rider which would allow the Court to read the restrictions that defendant places on it, namely, that the raising of the limit of coverage only applies to dwellings under Coverage B.  First, the language of the policy itself does not differentiate between Coverage A and Coverage B.  Nor does the Court's interpretation rely on the definition of "replacement cost," as it is not this term alone which grants plaintiff a greater right of recovery than may otherwise be stated in the declarations page.  Defendant may very well be correct that the definition of "replacement cost" stating that "the cost of acquiring an asset that is equally useful or productive as an asset currently held," does not raise the limits of coverage, *other* language in the policy does, doc. 48 at 4;  specifically  the  provision  stating  that  "replacement  cost"  for

11

dwellings subject to coverage under A or B is not limited to the coverage stated in the declarations page.

Second, even if the Court determined that there was an ambiguity—and moved to the second step of the Georgia contract interpretation analysis—the fact that Coverage B becomes hypothetically limitless does not make it mere surplusage. The Court notes that the replacement cost provision applies only to "buildings," not to other objects potentially covered under Coverage B, like debris removal. For example, both plaintiff and defendant acknowledge that a certain amount has already been paid out for damage to the "driveway, garage, fence, tree removal, etc." *See, e.g.,* doc. 41 at 2. Although neither party argues this, it is clear that the "replacement cost" rider applies only to buildings. The Court cannot conceive of a sufficiently tortured construction which would include "tree removal," as a building. Thus, even under defendant's interpretation there are still limitations on the coverage available under Coverage B.

Third, there is no need to supplement terms into the contract in order for the Court to conclude that the parties contracted additional building coverage in excess of the $1,693,500.00 limit. The parties have already done that, by agreeing to a rider providing replacement cost in

excess of that stated in the declarations page.  Finally, if the Court *had* concluded that the term is ambiguous, the Court would need to construe the language of the contract most strongly against the drafter.  Doing that here, the plain language of the insurance contract, and the ordinary meaning of the language in the policy would result in a finding against defendant.  Accordingly, plaintiff's motion should be **GRANTED** and defendant's motion should be **DENIED**.  Plaintiff should be entitled to seek recovery for the replacement cost of the dock and dockhouse in excess of the limitation set forth in Coverage B.

## CONCLUSION

For the foregoing reasons, plaintiff's motion should be **GRANTED**, doc. 41, and defendant's motion should be **DENIED**, doc. 42.  This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections

should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>16th</u> day of April, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA